J-S27010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER MILLER | : | |
| | : | |
| Appellant | : | No. 963 EDA 2016 |

Appeal from the Judgment of Sentence November 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013822-2013

BEFORE:  GANTMAN, P.J., OTT, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:　　　　　　　　　　**FILED JUNE 09, 2017**

Appellant, Christopher Miller, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his open guilty plea of third degree murder and endangering the welfare of a child.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case as follows:

> The decedent in this case was…Appellant's 7-week-old son…[("Victim")].  The cause of death was complications of craniocerebral trauma.   The manner of death was homicide.  …

_____

[1] 18 Pa.C.S.A. §§ 2502(c) and 4304(a)(1), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

On October 8, 2011, at approximately 10:30 a.m., [Victim's] mother, April O'Conn[e]r, went to the home that…Appellant shared with his family at 2008 South 17th Street in Philadelphia. Appellant had been caring for [Victim] since the day prior. Shortly after Ms. O'Conn[e]r arrived, [Victim] became unresponsive. [Victim] was taken to St. Agnes hospital then transferred to the Children's Hospital of Philadelphia (CHOP) because of the severity of his injuries.

Dr. Philip Scribano spoke to…Appellant during the course of [Victim's] treatment. Appellant indicated that there were other people in the home, but that he was the only person who had physical contact and was providing any kind of care to [Victim]. Dr. Scribano indicated that [Victim's] injuries were consistent with "inflicted injury."

[Victim] was pronounced [dead] almost one-year-and-a-half later on March 6, 2013. From the time of his admission to CHOP until his death, [Victim] was "[I]n a persistent vegetative state and was noted to be profoundly unconscious; although, he did withdraw to painful stimuli."

Dr. Ian Hood, a qualified expert in the field of forensic pathology, stated, "[T]hat in his 30 years, he had never seen an injury like this. After the imposition of the injury, [Victim] required a tracheotomy. He never breathed spontaneously." [Victim's] injuries included a branched comminuted skull fracture, a lacerated liver with a loss of blood, three broken right ribs, one broken left rib, bilateral retinal hemorrhaging, and a partial cutting of the junction of the spinal cord.

Dr. Hood described this as a severe deceleration and impact event. In order to fracture several ribs, the ribcage must be stabilized by wrapping one's hands around them and then pushing in an inch or more until the ribs snap. [Dr. Hood] also determined that the injury to the spinal cord would have been inflicted ten to twenty minutes before [Victim] was taken to the hospital. [Dr. Hood] was unable to determine whether the other injuries were inflicted in a single episode or over the course of one hour or more.

Dr. Lucy Rorke, a qualified expert in the field of pediatric neuropathology, analyzed [Victim's] brain and what remained of the brainstem and spinal cord. [Dr. Rorke's] description upon microscopic analysis was organized subdural hematoma, a total description of the cerebrum, severe brainstem and cerebellar necrosis or death, total description of the cervical spinal cord, bilateral destruction of retinal nerve fiber, and optic nerve degeneration.

\* \* \*

On March 9, 2015, Appellant entered into an open guilty plea, before the Honorable Rose Marie DeFino-Nastasi, to Third Degree Murder, 18 Pa.C.S.[A.] § 2502(c), as a felony of the first degree; and Endangering the Welfare of a Child (EWOC), 18 Pa.C.S.[A.] § 4304, as a felony of the third degree.

On November 13, 2015, Appellant was sentenced to fifteen (15) to thirty (30) years for the third degree murder conviction; and a consecutive seven (7) years' probation for the EWOC conviction.

On November 18, 2015, Appellant filed a motion for reconsideration of sentence, which [the court] denied without a hearing on January 11, 2016.

Counsel, Ronald Greenblatt, Esq., failed to file a timely notice of appeal. [Counsel] subsequently filed a petition pursuant to the Post Conviction Relief Act (PCRA), requesting that Appellant's appellate rights be reinstated *nunc pro tunc*. The court granted the petition on February 22, 2016.

On March 9, 2016, Attorney Greenblatt filed a timely notice of appeal [*nunc pro tunc*] and a motion to withdraw as counsel. The court granted the motion. David Rudenstein, Esq. was appointed by the Court Appointments Unit.

On May 31, 2016, Appellant filed a Rule 1925(b) Statement of [Errors] Complained of on Appeal, pursuant to an Order of the court, claiming that the sentence imposed was unduly harsh and manifestly excessive.

(Trial Court Opinion, filed June 28, 2016, at 1-3) (internal citation to record omitted).[2]

Appellant raises one issue for our review:

> WAS THE SENTENCING COURT'S SENTENCE A VIOLATION OF DISCRETION WHERE THE COURT SENTENCED [APPELLANT] TO 15 TO 30 YEARS OF INCARCERATION WHERE [APPELLANT] HAD ZERO (0) PRIOR RECORD SCORE AND HAD DEMONSTRATED REMORSE?

(Appellant's Brief at 3).

Appellant argues the court focused primarily on the seriousness of the crime when it sentenced Appellant. Appellant asserts the court failed to consider certain mitigating factors when it sentenced Appellant. Appellant specifically contends the court ignored Appellant's troubled upbringing and mental health issues. Appellant concludes the court's failure to consider these mitigating factors makes his sentence excessive, unreasonable, and inconsistent with the norms of the Pennsylvania Sentencing Code, and we should vacate and remand for resentencing. As presented, Appellant challenges the discretionary aspects of his sentence.[3] *See Commonwealth*

---

[2] Appellant's Rule 1925(b) statement was technically untimely. Nevertheless, the trial court had adequate opportunity and chose to prepare an opinion addressing the issue(s) raised on appeal. *See Commonwealth v. Burton*, 973 A.2d 428 (Pa.Super. 2008) (*en banc*). Thus, our review is unimpeded.

[3] "[W]hile a guilty plea which includes **sentence negotiation** ordinarily precludes a defendant from contesting the validity of his…sentence other than to argue that the sentence is illegal or that the sentencing court did not

*(Footnote Continued Next Page)*

- 4 -

*v. Lutes*, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing); ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (stating claim that sentencing court failed to consider or did not adequately consider certain factors implicates discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. ***Commonwealth v. Sierra,*** 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Evans,*** 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of sentence are generally waived if they are not raised at the

*(Footnote Continued)* ─────────────────

have jurisdiction, **open** plea agreements are an exception in which a defendant will not be precluded from appealing the discretionary aspects of the sentence." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 n.5 (Pa.Super. 2005) (emphasis in original). "An 'open' plea agreement is one in which there is no negotiated sentence." ***Id.*** at 363 n.1. Here, Appellant's guilty plea included no negotiated sentence.

sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases." *Commonwealth v. Phillips,* 946 A.2d 103, 112 (Pa.Super. 2008), *appeal denied*, 600 Pa. 745, 964 A.2d 895 (2009), *cert. denied*, 556 U.S. 1264, 129 S.Ct. 2450, 174 L.Ed.2d 240 (2009).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson*, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 913. A claim that a sentence is

manifestly excessive might raise a substantial question if the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence imposed violates a specific provision of the Sentencing Code or the norms underlying the sentencing process. *Mouzon, supra* at 435, 812 A.2d at 627. Nevertheless, as a general rule, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." *Cruz-Centeno, supra* at 545 (quoting *Commonwealth v. Urrutia*, 653 A.2d 706, 710 (Pa.Super. 1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995)). Moreover, where the sentencing court had the benefit of a PSI, the law presumes the court was aware of and weighed relevant information regarding a defendant's character along with mitigating statutory factors. *Tirado, supra* at 366 n.6.

Instantly, Appellant properly preserved his discretionary aspects of sentencing claim in his post-sentence motion and Rule 2119(f) statement. Appellant's assertion that the court improperly ignored certain mitigating factors, however, does not raise a substantial question under the facts of this case. *See Cruz-Centeno, supra*. Moreover, the court had the benefit of a PSI report. (*See* N.T. Sentencing Hearing, 11/13/15, at 49-50). Therefore, we can presume the court considered the relevant information and mitigating factors. *See Tirado, supra*. Finally, the record belies Appellant's contentions. The court remarked at sentencing:

All right. The Court reviewed the pre-sentence and the mental health, the sentencing memorandum from both parties, listened very carefully, read the letters. There was a letter given to the Court by [Appellant's] mother, so I have that, as well as his girlfriend, his father, a neighbor. The Court reviewed all of that.

This is an extremely, extremely, extremely difficult case. I think there is a lot of denial going on in this case. The court knows a little bit about mental illness. Because one is schizophrenic doesn't necessarily mean they are violent at all. So there is some mental illness but there is also a level of violence that is frightening.

The incident when [Appellant] was about 16 really forecasts violent behavior and it really gives the Court a lot of information about what happened on that night.

Who burns a baby in the face? Who? It is unfathomable and then once it happens, how do you not realize we got the biggest, as a family, we have a huge problem here? We have somebody who needs to be watched constantly, somebody that cannot be around children, cannot be around children and left alone and he wasn't alone. That is what is so frightening.

It is not like he completely decompensated, as schizophrenics can do, and just was psychotic because if he were psychotic, the mother would have noticed, his girlfriend would have noticed. He would be very noticeable because he would stand out is the problem. He wasn't standing out. He wasn't acting psychotically. With his family all around him, they would have intervened absolutely.

So it really takes away weight from the fact that he didn't take his medicine. He was in a psychotic state from schizophrenia. He was hearing voices telling him to hurt this baby. From all appearances, that really wasn't the case and [Appellant] doesn't even describe it as being the case. [Appellant] described it as I lost my temper. I got mad. I shook the baby and threw the baby to the floor.

It's scary. It's frightening. It's horrendous behavior. I

- 8 -

don't find that there is mental illness that calls for mitigation in this particular case based on what I have heard here today…. …

(**See** N.T. Sentencing Hearing at 49-52). The record shows the court adequately considered Appellant's mental health issues. Thus, Appellant's challenge to the discretionary aspects of his sentence merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017